In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 13-1799 & 13-1697

VLM FOOD TRADING INTERNATIONAL,
INC.,

*Plaintiff-Appellee/Cross-Appellant*,

*v.*

ILLINOIS TRADING COMPANY,
THE OBEE FAMILY PARTNERSHIP, and
LAWRENCE N. OBERMAN,

*Defendants-Appellants/Cross-Appellees*,

*and*

TRANSPORTATION ALLIANCE BANK, INC.,
d/b/a TAB BANK,

*Defendant/Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 C 8154 — **Harry D. Leinenweber**, *Judge.*

ARGUED NOVEMBER 7, 2013 — DECIDED APRIL 10, 2014

_____

Before BAUER, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. VLM Food Trading International, Inc., is a Canadian agricultural supplier. Illinois Trading Company, a reseller of agricultural produce, bought frozen potatoes from VLM but encountered financial difficulty and did not pay for them. VLM sued Illinois Trading, its president, and another entity in a position to control the company (collectively, "Illinois Trading") for the outstanding balance—about $184,000—owed on the contract. The complaint alleged four counts, two of which were based on the Perishable Agricultural Commodities Act ("PACA"), a depression-era law that creates a statutory trust in favor of the seller when a buyer purchases agricultural goods on short-term credit. 7 U.S.C. § 499e(c)(2). To protect the assets of the statutory trust, VLM also moved for a preliminary injunction. *See id.* § 499e(c)(5).

Illinois Trading had tried to stem its financial troubles by obtaining loans from the Transportation Alliance Bank ("TAB Bank"), giving the bank a security interest in its assets. By the time VLM brought its lawsuit, TAB Bank had already seized all of Illinois Trading's assets. But the PACA-created trust made VLM's claim superior to the bank's security interest. *See Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002). VLM amended its complaint to add a fifth claim—against TAB Bank—for seizing and converting PACA trust assets.

Prior to this amendment, however, VLM had moved for a consolidation of the preliminary-injunction hearing with a trial on the merits. The district court granted the motion. Everyone understood that the consolidated injunction and merits hearing pertained only to Counts I through IV—the claims by VLM against Illinois Trading—and not Count V, which pertained to the bank. When the district court issued its opinion, however, it not only resolved Counts I through IV, it also entered judgment for TAB Bank on Count V, holding that VLM failed to present any evidence on that claim. VLM appeals the judgment on Count V, arguing that it had insufficient notice that the court would treat the consolidated preliminary-injunction/merits hearing as a final hearing on that claim. We agree and reverse with respect to Count V.

The district court also awarded VLM its attorney's fees and interest on the unpaid balance based on contractual provisions in VLM's invoices. Illinois Trading cross-appeals on this issue, arguing that these provisions never became a part of the parties' contract. Complicating this question is a choice-of-law dispute: Illinois Trading argues that the controlling law is the United Nations Convention on Contracts for the International Sale of Goods, April 11, 1980, S. TREATY DOC. NO. 98-9 (1983), 1489 U.N.T.S. 3 ("the Convention"),[1] while VLM argues that Illinois's version of the Uniform Commercial Code controls. The relevant provisions in the Convention are materially different from those of the Uniform Commercial Code. The district court applied Illinois law and found that the invoice

---

[1] *Available at* https://treaties.un.org/doc/Publication/UNTS/Volume%201489/volume-1489-I-25567-English.pdf.

provisions regarding attorney's fees and interest became a part of the contract. We hold that the Convention controls and therefore reverse and remand for further proceedings.

## I. Background

VLM filed its complaint against Illinois Trading on October 10, 2012, stating four separate claims for money owed on unpaid invoices. Two of the claims (Counts I and IV) were based on a PACA statutory trust arising from VLM's shipment of potatoes to Illinois Trading. The following day VLM moved for a temporary restraining order and preliminary injunction to protect the trust assets. At the same time, VLM asked the court to consolidate the injunction hearing with a trial on the merits. *See* FED. R. CIV. P. 65(a)(2). The court granted a temporary restraining order and scheduled a preliminary-injunction hearing for October 25. On October 22 VLM amended its complaint, adding a fifth claim against TAB Bank for seizing and converting assets subject to a PACA trust (Count V).

Over the next few months, the district court repeatedly postponed the preliminary-injunction hearing at Illinois Trading's request. At some point Illinois Trading's counsel withdrew, so the court again rescheduled the hearing, this time to January 15, 2013. In the same order, the court granted VLM's consolidation request, specifying that the hearing "shall be consolidated with a hearing on the merits as to the [Illinois Trading] [d]efendants only and not the Bank. The Bank reserves its rights to litigate all issues in dispute."

Illinois Trading neither retained new counsel nor responded to the complaint by January 15, so VLM requested an entry of default judgment. TAB Bank objected because it feared that a final resolution of Counts I and IV against Illinois Trading would prejudice its ability to defend itself against Count V. Count V depends on the existence of the PACA trust alleged in Counts I and IV, but TAB Bank disputes the validity of VLM's PACA license. TAB Bank feared that if Counts I and IV were resolved, it would be precluded from defending on this basis when the court addressed the merits of Count V. The district judge responded by saying that he didn't know what effect a default judgment would have on the bank, but that Count V would be addressed at a later stage in the litigation. The judge granted the default judgment and rescheduled the preliminary-injunction hearing for February 19. The judge reiterated that the injunction proceedings were consolidated with a trial on the merits, though he did not at this time remind everyone that the consolidation concerned only the claims against Illinois Trading, not the claim involving the bank.

Illinois Trading finally got a new lawyer and moved to vacate the entry of default. It did not dispute the amount owed but only whether certain attorney's fees and interest provisions in VLM's invoices became a part of the contract. On February 12, during a hearing on this motion, Illinois Trading's new lawyer also requested an extension to get up to speed. In response VLM's lawyer proposed going forward with the hearing because it would be narrowly focused on the attorney's fees and interest provisions. The judge vacated the default judgment with respect to Illinois Trading's president only and declined to postpone the February 19 date for the

hearing. VLM's lawyer did not object, but requested that the court "keep all three [Illinois Trading] defendants together for the narrow hearing next week. Then we can just leave the bank kind of off on its own."

On February 15 TAB Bank filed a motion for a continuance of the February 19 hearing, or in the alternative, asked that the hearing be limited to Counts II and III. The bank again explained that it planned to contest the validity of VLM's PACA license and reiterated its fears about preclusion. The contents of the continuance motion make it clear that the bank's counsel understood that the hearing would address Counts I through IV and that Count V would be heard at a later time:

> Any ruling made on *Counts I[] and IV* would be binding upon TAB Bank[,] and any finding of fact relating to VLM Food Trading's alleged PACA rights would be prejudicial to TAB Bank and would[] in effect become the rule of law of the case, and in essence TAB Bank would be precluded from objecting to that determination *at a later date* based on the theory of res judicata.

(Emphases added.) The motion also stated that "TAB Bank's rights in defending Count V would be severely prejudiced" and that VLM was "seeking a judgment on all counts against [the Illinois Trading] [d]efendants."

At the beginning of the hearing on February 19, the district court denied TAB Bank's continuance motion. The bank's attorney asked the judge to clarify whether the judgment would be binding on the bank. The judge said he didn't know and would rule on the matter later, but that the hearing on the

remaining issues between VLM and Illinois Trading would go forward. With respect to the bank's argument about the legitimacy of the PACA license, the judge said: "Anyway, that's for another day. It's not part of this case, so let's proceed."

VLM and Illinois Trading presented evidence regarding the few remaining issues on Counts I through IV, but nothing on Count V against the bank. TAB Bank itself presented no evidence. After the hearing the district court set a deadline for posthearing briefs. Both VLM and Illinois Trading filed briefs focusing solely on Counts I through IV. TAB Bank did not submit a brief.

On March 5 the district court issued an order entering final judgment in favor of VLM on all claims against Illinois Trading and awarding attorney's fees and interest. Surprisingly, however, the court also found in favor of TAB Bank on Count V because VLM "failed to present any evidence or testimony" and "ha[d] not presented any arguments regarding TAB Bank's liability in its post-hearing brief." VLM immediately moved to alter or amend the judgment with respect to Count V because the scope of the hearing had been limited to its claims against Illinois Trading and did not include its claim against the bank.

Rather than acknowledging the district court's mistake, TAB Bank seized the opportunity to secure the advantage unwittingly bestowed on it by the court. Opposing VLM's motion to amend the judgment, the bank's lawyers grossly mischaracterized the motion for a continuance:

> TAB Bank requested a continuance of the trial
> of this matter or, in the alternative, an order
> limiting the trial. VLM Food Trading would not
> agree, opposed that motion, and it was denied
> by the [c]ourt. Now, VLM Food Trading is
> asking this court to enter an order limiting the
> scope of the trial, even though it argued against
> the limitations and the [c]ourt was very clear in
> its initial ruling on February 19, 2013 that this
> matter was proceeding on a trial on the merits.
> VLM Food Trading's request, and should be
> denied. [sic]
>
> In its motion for continuance and limiting the
> trial, TAB Bank outlined the causes of action,
> which <u>included</u> Count V of the amended com-
> plaint, and *discussed, at length, Count V of the
> amended complaint*, and what VLM Food Trading
> must prove in order to prevail on that Count. In
> its motion, TAB Bank stated that there was
> inadequate notice for a trial in *this matter*, that
> there had been no discovery, and as a result, felt
> that a continuance of the or limitation of the trial
> was necessary. The [c]ourt denied this motion at
> the outset of the trial.

(Emphases added.)

At a hearing on VLM's motion to amend the judgment, the mischaracterization continued:

> [VLM's Lawyer]: Well, at the time I made that
> request, there were three defendants. So that was

the whole point of the motion. We fully expected it to be a final day in court as to the three defendants at the time we filed that motion, but when there was later-added parties and later-added claims, that wasn't part of the motion.

THE COURT: Well, it definitely was discussed at the time of the hearing that it was a hearing on the merits.

[TAB Bank's Lawyer]: In fact, Your Honor, just to make it very clear, what is not pointed out here is that we filed a motion, a motion to limit the trial to not have evidence on Count [V]. That motion was filed on a Friday, and that motion was heard.

THE COURT: And it was denied.

[TAB Bank's Lawyer]: And that was specifically denied.

These representations were misleading because TAB Bank had asked the court to limit the hearing to *Counts II and III* and postpone a hearing on *Counts I and IV* because of the possible preclusive effect on Count V, which everyone understood would be decided later. The continuance was denied and the hearing proceeded on Counts I through IV, while Count V remained in the background, reserved "for another day." The bank's subterfuge worked. The district court denied VLM's motion to amend the judgment.

## II. Discussion

This appeal is limited to two issues. VLM challenges the judgment on Count V, and Illinois Trading's cross-appeal challenges the award of attorney's fees and interest on VLM's invoices.

### A. Count V

The parties dispute whether the consolidated preliminary-injunction/merits hearing was final with respect to Count V. We require "clear and unambiguous notice" that a claim will be resolved to finality in a consolidated preliminary-injunction hearing. *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972). Although the district court resolved all claims between VLM and Illinois Trading on the merits following the hearing, the record is clear that Count V—the claim involving the bank—was *not* consolidated and heard on February 19. Indeed, VLM's consolidation request was made *before* Count V was added to the complaint. When the judge granted the request, he explicitly stated that the claim against TAB Bank was not included in the scope of the consolidated proceedings. In the lead-up to the hearing, VLM's lawyer repeatedly communicated that he understood the February 19 hearing to be limited to the claims against Illinois Trading only, and neither the district court nor TAB Bank disagreed. In fact, on several occasions the judge assured the parties that issues related to the bank would be resolved separately at a later time. No party presented any evidence or made any argument on Count V either during the February 19 hearing or in the posthearing briefing.

On appeal TAB Bank continues to mischaracterize the district court's mistake, placing great weight on the court's denial of its February 15 motion for a continuance. But the bank misrepresents the judge's ruling, cherry-picking the record for favorable quotes while conveniently ignoring the distinction between Counts I through IV and Count V; the court specifically reserved the latter "for another day." Had TAB Bank been forthright in response to VLM's motion to amend the judgment, the judge could have corrected his mistake, and this issue would not have needed an appeal. We have no trouble reversing the judgment with respect to Count V.

## B. Attorney's Fees and Interest Provisions

Illinois Trading's cross-appeal concerns the question whether certain attorney's fees and interest provisions in VLM's invoices became an enforceable part of the parties' contract. The basic facts about the parties' course of conduct are undisputed. Illinois Trading sent purchase orders specifying the item, quantity, price, and place of delivery of the produce to be shipped. VLM responded to each purchase order with an email confirming the terms of the order. VLM then shipped the produce and thereafter sent invoices containing the attorney's fees and interest provisions. Illinois Trading paid the invoices on receipt for its first nine transactions with VLM, but failed to pay the next nine invoices, generating this lawsuit and the dispute over attorney's fees and interest.

The district court treated this as a "battle of the forms" under the Uniform Commercial Code. The relevant Code

section—U.C.C. § 2-207, enacted in Illinois at 810 ILL. COMP. STAT. § 5/2-207—provides that additional terms in an acceptance or confirmation of a contract between merchants become a part of the contract unless one of three exceptions applies. The only exception relevant to this case excludes terms that materially alter the contract. U.C.C. § 2-207(2)(b). Applying Illinois law, the district court held that the attorney's fees and interest provisions are not material and thus became part of the parties' contract. Illinois Trading argues that because VLM is a Canadian business, the controlling law is the United Nations Convention on Contracts for the International Sale of Goods, the "international analogue to Article 2 of the Uniform Commercial Code." *Chi. Prime Packers, Inc. v. Northam Food Trading, Co.*, 408 F.3d 894, 898 (7th Cir. 2005).[2]

---

[2] Illinois Trading also argues that even if Illinois law controls, U.C.C. § 2-207 does not apply because VLM accepted its offers (purchase orders) via the email confirmations and that the additional terms on subsequent invoices should be treated as proposed modifications. Although § 2-207 explicitly covers additional terms in an acceptance *or written confirmation*, some courts have held that it only applies to a confirmation that acts as an acceptance or is necessary to satisfy the statute of frauds. *See Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 677–80 (D.N.J. 2010) (listing cases). These courts distinguish between invoices that arrive *with* a shipment of goods or are the *only* written confirmation of a contract and those that arrive *after* a separate written acceptance and performance. *E.g., Enpro Sys., Ltd. v. Namasco Corp.*, 382 F. Supp. 2d 874, 882–84 (S.D. Tex. 2005) (citing *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1103–04 (7th Cir. 1997)). *Contra Monarch Nutritional Labs., Inc. v. Maximum Human Performance, Inc.*, No. 2:03CV474TC, 2005 WL 1683734, at *5 (C.D. Utah July 18, 2005) (citing *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996)). We do not need to address this issue because we find that the

(continued...)

Although "[m]any provisions of the [Uniform Commercial Code] and the [Convention] are the same or similar," *id.*, the Convention's battle-of-the-forms provision, Article 19, is significantly different from § 2-207.[3] First, it does not address additional terms in a written *confirmation*, but only those in "a reply to an offer which purports to be an acceptance." Convention art. 19(1), (2). If the contracts were formed *before* Illinois Trading received VLM's invoices—possibly via Illinois Trading's purchase orders and VLM's email confirmations—

---

[2] (...continued)

Convention, rather than Illinois law, controls.

[3] Article 19 of the Convention reads in its entirety:

> (1) A reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer.

> (2) However, a reply to an offer which purports to be an acceptance but contains additional or different terms which do not materially alter the terms of the offer constitutes an acceptance, unless the offeror, without undue delay, objects orally to the discrepancy or dispatches a notice to that effect. If he does not so object, the terms of the contract are the terms of the offer with the modifications contained in the acceptance.

> (3) Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, place and time of delivery, extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.

then the attorney's fees and interest provisions would be proposed modifications to the contracts and Article 19 may not even apply. Second, Article 19 defaults to the old common-law "mirror image" rule: "A reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer." *Id.* art. 19(1); *see Roser Techs., Inc. v. Carl Schreiber GmbH*, No. 11cv302 ERIE, 2013 WL 4852314, at *3–5 (W.D. Pa. Sept. 10, 2013) (holding that Article 19 embodies the mirror-image rule and listing cases holding the same); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 925 (N.D. Ill. 1999) (holding the same); *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 789 F. Supp. 1229, 1238 (S.D.N.Y. 1992) (same). Article 19 provides that *nonmaterial* additional terms in a purported acceptance become a part of the contract, *see* Convention art. 19(2), but defines "materiality" in a broad way that would appear to cover attorney's fees and interest provisions, *see* Convention art. 19(3) ("[T]erms relating, among other things, to the … extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.").

So the choice-of-law question is significant here, unlike many cases in which the relevant provisions of the Convention and Uniform Commercial Code are the same. *E.g.*, *Chi. Prime Packers*, 408 F.3d at 898; *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1182 n.9 (5th Cir. 1993) (refusing to decide whether the Convention or Texas law controlled because the parol-evidence rule applied either way).

As "a self-executing [treaty] between the United States and other signatories, including Canada," *Chi. Prime Packers*, 408 F.3d at 897, the Convention supersedes state law when it applies, U.S. CONST. art. VI, cl. 2; *Medellin v. Texas*, 552 U.S. 491, 504–06 (2008); *Hauenstein v. Lynham*, 100 U.S. 483, 490 (1880) ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution."). By its own terms, the Convention "applies to contracts of sale of goods between parties whose places of business are in different States." Convention art. 1(1). "[I]f a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance … ." *Id.* art. 10(a). Contracting parties can opt out of the Convention, *see id.* art. 6, but VLM and Illinois Trading did not. The sole question, then, is whether VLM's place of business is Canada or the United States. The district court concluded that it was the United States.

The parties disagree about the standard of review that applies to that determination. Illinois Trading characterizes it as a legal conclusion subject to de novo review; VLM characterizes it as a factual finding, which we review only for clear error. Actually, neither the facts nor the law are in dispute; the parties disagree about the *application* of the law to the facts, and our default standard of review for such "mixed" questions of law and fact is clear error. *See Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307–08 (7th Cir. 2002). There are exceptions, but most involve constitutional questions. *See id. But see Koch v. Koch*, 450 F.3d 703, 710 (7th Cir. 2006) (applying de novo review to a mixed question of law and fact under the Hague Convention on the Civil Aspects of International Child

Abduction). We don't need to resolve the dispute about the standard of review because our decision would be the same either way.

Most of VLM's business is conducted from its headquarters near Montreal, including its performance of the contract with Illinois Trading. VLM's only connection to the United States is a single office in New Jersey that appears to exist primarily to allow the company to maintain a PACA license. The district court thought that the New Jersey office sufficed to make VLM's place of business the United States. But Article 10(a) of the Convention provides that "if a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance." As we've noted, it's undisputed that VLM conducts most of its business in Canada, and the New Jersey office had no relationship to the performance of VLM's contracts with Illinois Trading. Accordingly, VLM's place of business is clearly Canada, and the Convention controls.

Our conclusion on the choice-of-law question requires a remand for further proceedings. Because the district court applied Illinois law, it did not address the Convention's application to this case.

REVERSED AND REMANDED.